1

2

3

4

5

6

7                      **UNITED STATES DISTRICT COURT**

8                      **EASTERN DISTRICT OF CALIFORNIA**

9

10   **In re**                                    )        **DISTRICT COURT CASE**
                                                  )        **NO. CIV-F-06-0388 AWI**
11   **ENOCH PACKING COMPANY, INC.,**             )
                                                  )        **BANKRUPTCY COURT CASE**
12              **Debtor.**                       )        **NO. 02-17736-A-7**
                                                  )
13   _____            )        **ADVERSARY PROCEEDING**
                                                  )        **NO. 05-01297-A**
14   **JOE FLORES AND CONNIE FLORES,**            )
                                                  )
15              **Appellants**,                   )
                                                  )        **MEMORANDUM OPINION AND**
16         **v.**                                 )        **ORDER DENYING APPELLANTS**
                                                  )        **JOE FLORES AND CONNIE**
17   **DDJ, INC. , et al,**                       )        **FLORES' APPEAL OF**
                                                  )        **BANKRUPTCY COURT'S**
18              **Appellees.**                     )        **DISMISSAL WITH PREJUDICE OF**
     _____            )        **ADVERSARY COMPLAINT**
19

20

21         This case comes before this Court on appeal from various orders issued by the bankruptcy

22   court. *Pro se* appellants Joe and Connie Flores ("Appellants" or the "Floreses") appeal the

23   bankruptcy court's dismissal with prejudice of their adversary complaint against over 60

24   defendants for allegedly receiving funds subject to a statutory trust created under the Perishable

25   Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499, *et seq*.  This Court affirms.

26                  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

27         The Floreses are growers of apples and mandarin oranges who filed a lawsuit in this

28   Court on June 1999, alleging that defendants DDJ, Inc. ("DDJ, Inc.") and DDJ, LLC ("DDJ,

1  LLC") (collectively, the "DDJ entities")[1] deprived them of the value of their crop and charged

2  them usurious interest.  The Floreses contended that the DDJ entities violated various provisions

3  of PACA, civil RICO statutes, and other laws.  Following a jury trial, the jury returned a special

4  verdict for the Floreses against the DDJ entities, including an award for punitive damages.  On

5  March 10, 2004 this Court entered judgment in favor of the Floreses.  Apparently, before the

6  Floreses could enforce their judgment, the DDJ entities filed for bankruptcy.

7          DDJ, Inc. and DDJ, LLC each filed voluntary Chapter 7 petitions on January 3, 2005.

8  The Floreses, however, did not attempt to enforce their purported PACA rights in either of these

9  bankruptcy cases, but instead pursued their claims against the DDJ entities in a separate Chapter

10  7 proceeding involving Enoch Packing Company ("Enoch Packing").[2]  According to the Floreses,

11  Enoch Packing and the DDJ entities have common ownership and management, and the DDJ

12  entities transferred to Enoch Packing assets impressed with a PACA trust.  On June 17, 2005,

13  DDJ, Inc.'s trustee filed a motion for allowance of a PACA trust claim in the Enoch Packing

14  bankruptcy based on the Floreses' judgement.  Mr. Flores filed a declaration in support of that

15  motion, asserting that DDJ, Inc. made certain payments to Enoch Packing that were impressed

16  with a PACA trust.  The Enoch Packing trustee filed an objection to the Floreses claim and

17  disputes Mr. Flores' assertion.

18          The Floreses then filed an Adversary Complaint on August 19, 2005 (the "Complaint") in

19  the Enoch Packing bankruptcy case.  The Floreses sued more than 60 defendants they allege

20  received funds subject to a statutory trust, alleging claims under PACA, breach of fiduciary duty,

21  turnover of property not in the bankruptcy estate, and constructive trust.  Several defendants

22  moved for dismissal of the adversary complaint on a number of different theories including, that

23

24

          [1]At the time of the June 1999 action, DDJ, Inc. and DDJ, LLC were known as Fruit
25  Marketing, Inc. and Food Marketing Investment Company, respectively.

26          [2]The Enoch Packing bankruptcy was originally an involuntary Chapter 7 petition filed on
     August 22, 2002.  The case was converted to Chapter 11, and an order for relief entered
27  September 24, 2002.  In February 2003, the case was converted from Chapter 11 to Chapter 7.

28                                               2

1 the complaint violated the automatic stay, that the statute of limitations barred the Floreses'

2 claims, that even if a valid PACA trust existed certain defendants cannot be held liable, and that

3 the Floreses failed to preserve their PACA rights.

4      On February 3, 2006, the bankruptcy court dismissed Appellants' complaint without

5 leave to amend based on its conclusion that Appellants did not preserve their PACA trust claims.

6      Appellants moved for partial reconsideration based on the bankruptcy court's written

7 findings of fact and law that purportedly conflated the DDJ entities, and also based on a single

8 sentence Appellants argued was contradictory to the bankruptcy court's finding that Appellants

9 failed to preserve PACA rights.  According to Appellants, the bankruptcy court did not consider

10 that DDJ, Inc. was acting as Appellants' commission merchant, that is as Appellants' agent.  On

11 March 8, 2006, at oral argument on the motion for reconsideration, the bankruptcy court clarified

12 its factual findings regarding the DDJ entities, but concluded that Appellants' argument that

13 DDJ, Inc. perfected Appellants' PACA trust rights was simply not correct under the law and that

14 there was no need to change its conclusion of law.  The bankruptcy court denied Appellants'

15 request for reconsideration on that basis.  The bankruptcy court also denied Appellants's *ex parte*

16 request for stay pending appeal.

17      The Floreses appealed to the Ninth Circuit Bankruptcy Appellate Panel ("BAP") on

18 March 14, 2006.  Defendant Central Valley Community Bank objected to proceeding before the

19 BAP and requested transfer of the appeal to the district court.  The BAP transferred Appellants'

20 appeal to this Court on April 4, 2006.

21      Before this Court is the Floreses' appeal of the bankruptcy court's dismissal of the

22 adversary complaint, denial of the motion for partial reconsideration, denial of the *ex parte*

23 request for stay pending appeal, denial of Appellants' objection to the attorney representing DDJ,

24 Inc.'s Chapter 7 trustee, and "any appealable orders in this action."[3]

25

26      [3]Some of the briefing parties argue that Appellants' "failure to include an intelligible
statement of issues to be determined on appeal is ground for the appeal to be dismissed," citing
27 *In re Morrissey*, 349 F.3d 1187, 1189 (9th Cir. 2003).  Appellants reply that they adopt the

28                                                        3

1

**STANDARD OF REVIEW**

2       The district court's standard of review over a bankruptcy court's decision is identical to

3  the standard used by circuit courts reviewing district court decisions. *See In re Baroff*, 105 F.3d

4  439, 441 (9th Cir. 1997).  Thus, the district court reviews the bankruptcy court's factual findings

5  for clear error and its conclusions of law *de novo*.  *See In re Southern Cal. Plastics, Inc.*, 165

6  F.3d 1243, 1245 (9th Cir. 1999).

7                                              **DISCUSSION**

8       According to the bankruptcy court, "the common denominator of all the claims [in the

9  adversary complaint] is the existence of a PACA trust from which the Plaintiffs allege they are

10 entitled to benefits.  If Plaintiffs are not entitled to PACA trust benefits, then the complaint must

11 fail against all defendants.  Therefore, the court will address primarily in these findings whether

12 Plaintiffs preserved PACA trust claims."  Findings of Fact and Conclusions of Law Regarding

13 Motion to Dismiss ("FFCL"), 10:10-14.  This Court agrees that Appellants' claims hinge on their

14 PACA trust rights.

15      **I.      PACA**

16      Congress enacted the Perishable and Agricultural Commodities Act ("PACA") in 1930

17 with the intent of "preventing unfair business practices and promoting financial responsibility in

18 the fresh fruit and produce industry."  *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th

19 Cir. 1997).  Under PACA, a statutory trust is created in favor of all unpaid suppliers or sellers of

20 perishable agricultural commodities upon receipt of such goods by a "commission merchant,

21

22

23 statement of issues by Appellees Central Valley Community Bank and Charlene Enoch.
   Although Appellants' statement of issues is somewhat opaque, in light of Appellants' agreement
24 with the issues as framed by other Appellees, as well as the fact that many of the Appellees
   responded to Appellants' opening brief, and that Appellants' notice of appeal identified that
25 Appellants' appeal related to appeal of the bankruptcy court's dismissal of the adversary
   complaint, denial of the motion for partial reconsideration, denial of the *ex parte* request for stay
26 pending appeal, denial of Appellants' objection to the attorney representing DDJ, Inc.'s Chapter
   7 trustee, the Court denies any motion to dismiss for failure to include an intelligible statement of
27 issues.

28                                                   4

1    dealer, or broker."[4]  The PACA trust "was established by Congress to protect sellers and

2    suppliers of perishable agricultural commodities until full payment of sums due have been

3    received." *In re Southland + Keystone,* 132 B.R. 632, 639 (9th Cir. BAP 1991), *quoting In re*

4    *Milton Poulos, Inc.,* 94 B.R. 648, 650 (Bankr. C.D. Cal. 1988).  The PACA trust provision

5    provides, in relevant part:

6    　　　　　Perishable agricultural commodities received by a commission
     　　　　　merchant, dealer, or broker in all transactions, and all inventories
7    　　　　　of food or other products derived from perishable agricultural
     　　　　　commodities, and any receivables or proceeds from the sale of such
8    　　　　　commodities or products, shall be held by such commission
     　　　　　merchant, dealer, or broker in trust for the benefit of all unpaid
9    　　　　　suppliers or sellers of such commodities or agents involved in the
     　　　　　transaction, until full payment of the sums owing in connection
10   　　　　　with such transactions has been received by such unpaid suppliers,
     　　　　　sellers, or agents.

11

12   7 U.S.C. § 499e(c)(2).  The PACA trust is a "nonsegregated floating trust" that applies to the

13   perishable "commodities, products derived therefrom, and any receivables or proceeds from their

14   sale in the hands of the commission merchant, dealer, o[r] broker."  H.R. REP. NO. 98-543, at 2

15   (1983), *reprinted in* 1984 U.S.C.C.A.N. 405, 406.

16   　　　　PACA gives trust beneficiaries formidable powers, including priority over all other

17   creditors in a bankruptcy.  *See Middle Mountain Land and Produce Inc. v. Sound Commodities,*

18   ────────────────────

19   　　　　[4]These are defined terms under PACA.  7 U.S.C. § 499a defines them as follows:

20   　　　(5) The term "commission merchant" means any person engaged in the business of
     receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on
21   commission, or for or on behalf of another.

22   　　　(6) The term "dealer" means any person engaged in the business of buying or selling in
     wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural
23   commodity in interstate or foreign commerce, except that (A) no producer shall be considered as
     a "dealer" in respect to sales of any such commodity of his own raising; (B) no person buying
24   any such commodity solely for sale at retail shall be considered as a "dealer" until the invoice
     cost of his purchases of perishable agricultural commodities in any calendar year are in excess of
25   $230,000 ....

26   　　　(7) The term "broker" means any person engaged in the business of negotiating sales and
     purchases of any perishable agricultural commodity in interstate or foreign commerce for or on
27   behalf of the vendor or the purchaser ....

28   　　　　　　　　　　　　　　　　　　　　5

1    Inc., 307 F.3d 1220, 1224 (9th Cir. 2002); *Universal Fruit Company, Inc. v. Windward*

2    *Management Co.*, 47 Agric. Dec. 1770, 1771-72 (U.S.D.A. 1988) ("Congress intended to give

3    suppliers and sellers priority over other creditors in a bankruptcy proceeding."). PACA also

4    provides for disgorgement from third parties of funds impressed with a PACA trust. *See In re*

5    *Southland + Keystone,* 132 B.R. at 632.

6           Any supplier or seller of agricultural commodities who gives proper notice of its interest

7    in the PACA trust has a claim against the trust. *Id*. at 639. PACA requires the beneficiary to

8    preserve its trust right by providing written notice of its intent to preserve the trust within thirty

9    days after the time payment is due. The PACA trust preservation provision provides:

10                  The unpaid supplier, seller, or agent *shall lose the benefits of such*
                    *trust unless such person has given written notice of intent to*
11                  *preserve the benefits of the trust* to the commission merchant,
                    dealer, or broker within thirty calendar days (i) after expiration of
12                  the time prescribed by which payment must be made, as set forth in
                    regulations issued by the Secretary, (ii) after expiration of such
13                  other time by which payment must be made, as the parties have
                    expressly agreed to in writing before entering into the transaction,
14                  or (iii) after the time the supplier, seller, or agent has received
                    notice that the payment instrument promptly presented for payment
15                  has been dishonored. The written notice to the commission
                    merchant, dealer, or broker shall set forth information in sufficient
16                  detail to identify the transaction subject to the trust. When the
                    parties expressly agree to a payment time period different from that
17                  established by the Secretary, a copy of any such agreement shall be
                    filed in the records of each party to the transaction and the terms of
18                  payment shall be disclosed on invoices, accountings, and other
                    documents relating to the transaction.

19

20    7 U.S.C. § 499e(c)(3). (emphasis added). If a beneficiary does not comply with the notice

21    requirements, it loses the benefits of the PACA trust. *See In re Marvin Properties, Inc.*, 854 F.2d

22    1183, 1186 (9th Cir. 1988) ("The language of section 499e(c)(3) is unambiguous on its face. It

23    clearly states that the seller shall lose the trust benefits unless '*such person* has given written

24    notice of intent to preserve benefits of the trust to the commission merchant, dealer, or broker

25    and has filed such notice with the Secretary....'"). (emphasis original). *See also In re Fresh*

26    *Approach*, *Inc.*, 51 B.R. 412, 423 (Bankr. N.D. Tex. 1985) ("Use of the words 'shall lose' and

27

28                                                      6

1  'preserve' plainly refer to rights or interests existing prior to perfection. The clear meaning of the

2  preservation provisions is that a beneficiary's pre-existing beneficial interest would evaporate

3  absent affirmative steps by such a beneficiary to protect such interests. In short, the beneficial

4  interest arises, by operation of law, upon delivery to a dealer of qualifying produce, and said

5  interest exists unless and until either the claim is satisfied or the beneficiary fails to take the

6  necessary steps to perfect.").

7       In 1995, Congress amended PACA to allow "licensees" an alternate method of preserving

8  PACA trust rights.[5]  "Licensees" are entities that hold a valid license issued under PACA.  *See* 7

9  U.S.C. § 499c(a); 46 C.F.R. § 46.2(*l*).  Commission merchants, dealers, and brokers are required

10  to be PACA licensees.  *Id*.  Licensees may preserve their trust benefits by giving written notice or

11  by using invoices including certain PACA trust language.  The licensee preservation provision

12  provides:

13           In addition to the method of preserving the benefits of the trust
             specified in paragraph (3), a licensee may use ordinary and usual
14           billing or invoice statements to provide notice of the licensee's
             intent to preserve the trust. The bill or invoice statement must
15           include the information required by the last sentence of paragraph
             (3) and contain on the face of the statement the following: "The
16           perishable agricultural commodities listed on this invoice are sold
             subject to the statutory trust authorized by section 5(c) of the
17           Perishable Agricultural Commodities Act, 1930 (7 U.S.C.
             499e(c)). The seller of these commodities retains a trust claim over
18           these commodities, all inventories of food or other products
             derived from these commodities, and any receivables or proceeds
19           from the sale of these commodities until full payment is received."

20  7 U.S.C. § 499e(c)(4).

21       Thus, under the statutory language, a PACA trust is created in favor of unpaid suppliers,

22  sellers, or their agents at the time the perishable commodities are received by a commission

23  merchant, dealer, or broker but, in order to preserve the PACA trust, the beneficiaries are further

24

_____

25       [5]At least one of the intended goals of the 1995 amendments to PACA was to implement a
    "paperless trust."  Prior to the amendments, trust beneficiaries were required to file their intent to
26  preserve PACA trust rights with the U.S. Department of Agriculture ("USDA") in addition to
    notifying the commission merchant, dealer or broker.  *See* H.R. Rep. 104-207.  This filing system
27  proved to be burdensome and costly to the agency.  *Id*.

28                                                7

1  required to provide written notice to the commission merchant, dealer or broker in receipt of

2  those commodities within a specified time period.  *See* 7 U.S.C. § § 499e(c)(2), (c)(3).  If the

3  beneficiary is a licensee, then it may perfect its PACA trust rights by including certain statutory

4  language on its invoices.  *See* 7 U.S.C. § 499e(c)(4).  Under the plain language of the statute, it

5  does not appear that a beneficiary that is not also a licensee can rely on invoices to preserve its

6  trust rights.  The question raised by Appellants is whether a beneficiary who uses an agent who is

7  a licensee may perfect its PACA trust rights through the agent's use of invoices.

8         **A.       The Bankruptcy Court's Findings Regarding the Floreses' PACA Rights**

9         The Floreses' Complaint did not allege that they gave written notice under § 499e(c)(3).

10  Rather, the Complaint alleges that "both DDJ, Inc., and DDJ, LLC, while invoicing sales

11  consummated on behalf of Flores ... preserve[d] the benefits of the PACA Trust assets for their

12  principal (Flores' [sic]) by incorporating language on the billing invoice ...."  Complaint ¶ 66.  At

13  oral argument on the motions to dismiss, Appellants admitted they did not give notice under §

14  499e(c)(3), and that they were not PACA licensees eligible to give notice under § 499e(c)(4):

15              Court: Let's say that we got past the jurisdictional hurdles
             and the other hurdles here, and I said, okay, you need to - I'm going
16           to grant this motion to dismiss by the Vartan people with leave to
             amend to assert that you gave written notice of your intent to
17           preserve the benefits of the trust.  Would that be an empty act in
             that you're telling me today that you did not give such written
18           notice?

19              Mr. Flores: In a manner of speaking it would be, but that I
             would have to move forward and talk to some people that I know
20           in PACA and get Congress's intent in this issue.

21              Court: Okay. And so - and the other point is, you didn't
             allege that you're a PACA licensee.  And if I were to give you
22           permission to amend the complaint to see if you could allege that
             you were a PACA licensee, are you telling me that you weren't a
23           PACA licensee, and so that would be kind of a meaningless -

24              Mr. Flores: That is precisely the reason, Your Honor, which
             I am not obligated to file a PACA Trust. I hire a commission
25           merchant to stand in my stead.

26              Court: Because you're not a PACA licensee.

27

28                                              8

1

> Mr. Flores: Because I am not a PACA licensee.  And,
> therefore, I do not - my PACA, Your Honor-

2

3

> Court: Your position is that you don't have to give written
> notice.

4

> Mr. Flores: Yes, because I have somebody already giving
> written notice on my behalf who is DDJ, Inc., and they collected
> the money.  And when they collected the money, that became a
> constructive trust.

5

6

December 7, 2005 Transcript, at 36:7-37:9.  The Floreses' position is that their commission

7

merchant and agent, DDJ, Inc., gave notice under § 499e(c)(4) to third party buyers of the

8

Floreses' agricultural products that it sold on their behalf by incorporating PACA trust language

9

on its invoices.  According to Appellants' reasoning, this notice served to preserve their trust

10

rights.

11

The bankruptcy court rejected this argument and granted the motion to dismiss.  The

12

bankruptcy court reasoned that although a PACA trust automatically goes into effect at the time

13

possession of produce is transferred, sellers must properly preserve their trust rights by meeting

14

specific notification requirements.  FFCL at 11:14-16.  Unless a produce seller complies strictly

15

with the PACA notice provisions, any PACA trust rights will be lost.  *Id.* at 12:8-10.  The

16

bankruptcy court cited to *In re San Joaquin Food Serv. Inc.*, 958, F.2d 938, 940 (9th Cir. 1992)

17

for the proposition that "the language of the statute unambiguously required the seller to give

18

notice to the buyer."  Regarding Appellants' arguments relating to the PACA trust language on

19

the invoices, the bankruptcy court found that:

20

> As PACA licensees marketing Plaintiffs' fruit, the DDJ entities
> were required to give the appropriate notice to buyers in order to
> preserve the PACA trust created when delivery was made pursuant
> to the sale.  Thus, to the extent buyers failed to pay, Plaintiffs' trust
> rights and PACA remedies were preserved.  However, Plaintiffs
> are not claiming that the buyers invoiced by the DDJ entities did
> not pay.  Instead, Plaintiffs are asserting that the DDJ entities
> received payment but did not pay Plaintiffs.

21

22

23

24

25

FFCL at 13:26-14:5.  The court found that because Appellants never gave timely notice "to the

26

DDJ entities" of their intent to preserve PACA trust rights under § 499e(c)(3) and 7 C.F.R. §

27

28

9

1   46.46(c)(2) (which tracks § 499e(c)(3)), their PACA trust claim could not stand.  *Id.*

2   The Floreses filed a motion for partial reconsideration based on what the Floreses argued

3   was the bankruptcy court's misinterpretation of the facts.  The Floreses contended that the

4   bankruptcy court mistakenly conflated DDJ, Inc. and DDJ, LLC.[6]  According to the Floreses,

5   DDJ, Inc. was the Floreses' "exclusive agent" and commission merchant, and DDJ, LLC was a

6   buyer of the Floreses' agricultural goods and not its agent or commission merchant.  In their

7   motion for reconsideration, the Floreses agreed with the bankruptcy court's ruling that they had

8   failed to perfect their PACA trust rights against DDJ, Inc., but maintained that the court failed to

9   address their argument that DDJ, Inc., as their "exclusive agent" and commission merchant,

10  perfected their PACA trust rights against DDJ, LLC.  The Floreses motion for reconsideration

11  also seems to be based on the wording of the bankruptcy court's formal ruling which suggested

12  that DDJ, Inc.'s notices to third party buyers preserved Plaintiffs' PACA rights against those

13  third parties.[7]

14  At oral argument on the reconsideration motion, the bankruptcy court considered Mr.

15  Flores' clarifying statements regarding the relationship of the DDJ entities and DDJ, Inc.'s status

16  as the Floreses' commission merchant-agent, but came to the same legal conclusion.  In denying

17

18

19      [6]This Court's review of the Complaint indicates that it may be the source of some
    confusion among the parties and the bankruptcy court.  The Floreses allege that DDJ, Inc. and
    DDJ, LLC are each "a commission merchant, shipper and dealer of perishable agricultural
20  commodities operating and licensed subject to PACA."  Complaint ¶ ¶ 2-3.  In another place the
    Complaint alleges that DDJ, Inc. and DDJ, LLC are each "a merchant broker, licensed dealer,
21  and commission merchant within the meaning of 7 U.S.C. § 499(b) . . . under [PACA], and
    regulated under 7 U.S.C. § 499a(1)."  ¶ ¶ 45, 47.  The relationship between DDJ, Inc. and DDJ,
22  LLC is not clear.  At various points the Complaint alleges that DDJ, LLC is the subsidiary of
    DDJ, Inc., at others that DDJ, Inc. is the subsidiary of DDJ, LLC.  *Compare* ¶ ¶ 47, 65.

23
        [7]The Floreses' reliance on a single sentence in the bankruptcy court's written findings of
24  fact and conclusion of law to support their position is misguided and can be addressed briefly.
    The bankruptcy court wrote, "Thus, to the extent buyers failed to pay, Plaintiffs' trust rights and
25  PACA remedies were preserved."  FFCL, at 14:2-3.  The Floreses take this sentence out of
    context.  This sentence does not contradict the bankruptcy court's ultimate finding that the
26  Floreses had no PACA rights, nor does it support the argument that the Floreses PACA remedies
    were somehow preserved.  As discussed, *infra*, any PACA rights the Floreses may have had
27  ceased to exist when they failed to give notice of intent to preserve such rights.

28                                          10

1  the motion for partial reconsideration, the bankruptcy court made an oral ruling stating:

2           [N]othing in that clarification affects the Court's ruling that
            plaintiffs did not give the notice required under . . . 7 U.S.C. §
3           499e(c)(3). There's no argument about that. The argument is really
            a legal one, that DDJ, Inc. gave the notice described at 7 U.S.C. §
4           499e(c)(4), and that this notice preserved Mr. Flores's rights to a
            PACA trust. And the court has already found, as a matter of law,
5           that this is simply not correct. Having made the factual
            clarification, there is no need to change the legal conclusions. I will
6           add, parenthetically, that Mr. Flores's argument about the language
            in the invoices that DDJ, Inc. preserved PACA rights may go to
7           PACA rights preserved on behalf of DDJ, Inc., in which case the
            claim would not belong to Mr. Flores.
8
   March 8, 2006 Transcript, at 34:5-19.  The bankruptcy court denied the Floreses' motion for
9
   reconsideration.
10
           **B.     The Floreses' PACA Rights**
11
           On appeal, the Floreses contend that DDJ, Inc., as their agent and commission merchant,
12
   perfected their PACA trust rights when it invoiced various buyers, including DDJ, LLC, with
13
   invoices containing the PACA trust language mandated in § 499e(c)(4).  The Floreses do not
14
   challenge the bankruptcy court's finding that they failed to preserve their trust rights against
15
   DDJ, Inc.
16
           Appellants have not cited, and this Court's research did not uncover, any case law or
17
   administrative decisions where an agent is deemed to have preserved its principal's PACA rights
18
   on behalf of a principal in the manner suggested by the Floreses.[8]  The Floreses rely on language
19

20
           [8]In *In re Marvin Properties, Inc*., 854 F.2d 1183 (9th Cir. 1988), sellers argued that the
21  USDA gave notice of their intent to preserve PACA trust rights to buyers based on an agency
   theory.  There, sellers failed to give written notice to buyers of their intent to establish a PACA
22  trust but, under the provisions then in effect, gave notice to the USDA.  The USDA sent buyers a
   copy of the notice, and sellers argued that notice met the requirements of PACA because the
23  agency acted as its agent.  The Ninth Circuit affirmed the BAP's refusal to consider sellers'
   argument because it was not made to the bankruptcy court and was first raised on appeal.
24  *Marvin*, 854 F.2d at 1186-87.  The Ninth Circuit held that the sellers failed to comply with the
   statutory notice requirements.  *Id*.
25
           *Payette Valley Fruit, Inc. v. Gem State Sales, Inc*, 48 Agric. Dec. 723 (U.S.D.A. 1989),
26  and *Griffin-Holder Co. v. Smith*, 49 Agric. Dec. 607 (U.S.D.A. 1990) are reparation actions
   where the principals argued that their agents failed to preserve their PACA trust rights by not
27  giving the requisite notice to buyers.  *Payette Valley* was not decided on that issue.  *Griffin-*

28                                              11

1 in the regulations promulgated under to PACA to support their argument, and on general

2 principles of agency law.

3       The Floreses cite to 7 C.F.R. § 46.46(c)(2), regarding "Trust benefits," which provides:

4               Any licensee, or person subject to license, who has a fiduciary duty
                to collect funds resulting from the sale or consignment of produce,
5               and remit such funds to its principal, also has the duty to preserve
                its principal's rights to trust benefits in accordance with paragraph
6               (f) of this section.  The responsibility for filing the notice to
                preserve the principal's rights is obligatory and cannot be avoided
7               by the agent by means of a contract provision.

8 Paragraph (f) provides the various ways notice of intent to preserve the trust can be given and

9 tracks the language of 7 U.S.C. §§ 499e(c)(3) and (c)(4), including a licensee's ability to preserve

10 trust benefits through the use of invoices.  *See* 7 C.F.R. § 46.46(f)(3).

11       Also relevant is 7 C.F.R. § 46.46(d)(2) regarding "Trust maintenance," which provides:

12              Agents who sell perishable agricultural commodities on behalf of a
                principal are required to preserve the principal's rights as a trust
13              beneficiary as set forth in § 46.2(z) [relating to accounting], (aa)
                [relating to payment] and paragraphs (d) [relating to trust
14              maintenance], (f) [relating to notice of intent to preserve trust
                benefits], and (g) [no such provision] of this section.  Any act or
15              omission which is inconsistent with this responsibility, including
                the failure to give timely notice of intent to preserve trust benefits,
16              is unlawful and in violation of section 2 of the Act (7 U.S.C. 499b)
                [relating to unfair conduct].

17

18 According to the Floreses' reasoning, as their agent DDJ, Inc. had a fiduciary duty to perfect their

19 PACA trust rights on their behalf, and this duty was unavoidable.

20       The Floreses' reply briefs discuss at length the nature of the agency relationship between

21 the Floreses and DDJ, Inc.  Some of the appellees' opposition briefs had characterized the

22 transactions between the Floreses and DDJ, Inc. as a "sale" and argued that the Floreses failed to

23

24 _____

25 *Holder* cited to *Payette Valley* for the proposition that an agent has a duty to file an appropriate
   trust notice to protect its principal.  *See Griffin-Holder*, 49 Agric. Dec. at 609.  Neither case
   discusses whether the principal complied with the notice provisions of PACA by preserving its
26 PACA rights with its agent or any other party.  These cases are distinguishable because they do
   not addresses the issue at hand in the instant case: whether an agent can preserve trust rights on
27 behalf of a principal when the principal did not preserve its rights.

28                                          12

1    preserve their trust rights when they sold produce to DDJ, Inc. The Floreses maintain that they

2    did not sell produce to DDJ, Inc., that DDJ, Inc. never took title to their produce, and that DDJ,

3    Inc. merely took possession of the produce in order to sell it on their behalf under the terms of a

4    packing and marketing agreement with DDJ, Inc.'s predecessor.[9]  According to the Floreses, this

5    principal-agent relationship has at least two effects on their PACA rights: (1) the Floreses

6    purportedly did not have to give notice to DDJ, Inc. because they did not *sell* produce to DDJ,

7    Inc., but instead DDJ, Inc. merely had possession of the apples as their agent for sale, with the

8    Floreses retaining title; and (2) the Floreses could purportedly rely on DDJ, Inc. to preserve their

9    PACA rights when DDJ, Inc. sold the Floreses' produce to third parties using invoices because

10   DDJ, Inc. was acting on their behalf as an agent.  The regulations do not support the Floreses'

11   arguments.

12         The regulations clearly state that a "seller, supplier, or agent" must give notice to its

13   commission merchant, dealer, or broker in order to preserve its trust rights.  Subsection (c)(1)

14   provides that "[w]hen a seller, *supplier*, or agent . . . transfers ownership, *possession*, or *control*

15   of goods to a commission merchant, dealer, or broker, it automatically *becomes eligible* to

16   participate in the trust.  Participants *who preserve their rights* to benefits in accordance with

17   paragraph (f) of this section remain beneficiaries until they are paid in full."  7 C.F.R. §

18   46.46(c)(1).  Clearly, even if the Floreses did not sell their apples to DDJ, Inc., they transferred

19   "possession" and "control."  The Floreses were "eligible" to partcipate in the PACA trust as long

20   as they preserved their PACA rights by complying with the notice provisions of paragraph (f).

21   Therefore, even if the Floreses did not *sell* their apples to DDJ, Inc. they were still required to

22

23

24

25         _____

26   [9]The Floreses had a written agreement in place with DDJ, Inc.'s predecessor for packing
     and marketing services for 1995-98.  Under those agreements, DDJ, Inc. acted as the Floreses'
27   exclusive agent and sold the Floreses' produce.  DDJ, Inc. does not appear to buy or take title.
     The Floreses admit that do not have a contractual relationship with DDJ, LLC.

28                                                   13

1    comply with the notice requirements.[10]

2        The Floreses' argument that DDJ, Inc. was their agent does not change the result.  The

3    regulations clearly contemplate agency relationships of the type at issue here and specifically

4    require the principal to act to preserve its trust rights vis-a-vis its agent: "A principal employing a

5    collect and remit agent *must* preserve *its* rights to trust benefits *against such agent* by filing

6    appropriate notices *with the agent*."  7 C.F.R. § 46.46(c)(2).  (emphasis added).  Thus, the

7    regulations specifically state that the principal *must* preserve its rights against its agent in order

8    for the principal to be eligible to participate in the PACA trust and remain a beneficiary.  If the

9    principal fails to do this, it loses any PACA rights.  *Cf. In re Fresh Approach*, 51 B.R. at 423

10   ("The clear meaning of the preservation provisions is that a beneficiary's pre-existing beneficial

11   interest would evaporate absent affirmative steps by such a beneficiary to protect such interests.")

12   The Floreses have not alleged in the Complaint, and have admitted at oral argument and in their

13   briefs, that they did not preserve their trust rights with DDJ, Inc., thus any trust rights that may

14   have existed ceased to exist when they failed to perfect vis-a-vis their own agent.  The Floreses

15   have no PACA rights.

16       **C.**    **Whether An Agent That Is A Licensee Can Preserve PACA Rights on a**

17           **Principal's Behalf Under § 499e(c)(4).**

18       The Floreses argument that DDJ, Inc. could preserve their PACA rights when it sold their

19

20       [10]Similarly, the fact that the Floreses did not sell directly to buyers does not impede their
21   ability to preserve with their agent.  That is, a seller or supplier's claim that it cannot preserve its
     PACA rights because it did not know when the produce was sold or whether the agent was being
22   paid on time does not absolve a seller or supplier from the requirement to preserve its PACA
     rights.  The regulations provide guidelines by when such parties can agree to payment and remain
23   eligible for trust benefits.  7 C.F.R. § 46.46(e)(2), regarding "Prompt payment and eligibility for
     trust benefits," provides: "The maximum time for payment for a shipment to which a seller,
24   supplier, or agent can agree and still qualify for coverage under the trust is 30 days after *receipt
     and acceptance* of the commodities ...."  (emphasis added).  Paragraph (f)(2) provides that a
25   notice of intent to preserve is timely if made within 30 days after the expiration of the time
     described in (e)(2).  *See* 7 C.F.R. § 46.46(f)(2).  Thus, even if the Floreses did not know when
26   their produce was sold or if DDJ, Inc. was being paid on time, they were still required to file
     notice of their intent to preserve their trust claims at most 60 days after they shipped the produce
27   to DDJ, Inc.

28                              14

1   produce to third parties fails because an agent cannot preserve non-existent trust rights and

2   because § 499e(c)(4) is limited to licensees.

3          Contrary to the Floreses' argument, the regulations do not provide a mechanism for

4   agents to preserve the PACA interests of their principals when the principals themselves failed to

5   preserve their own rights.  Under PACA, an agent has the duty to preserve its principal's rights

6   only to the extent that such rights exist, i.e., that the principal perfected its rights with the agent.

7   *See* 7 C.F.R. §§ 46.46(c)(2), (d)(2).[11]  The regulations specifically require that the principal must

8   preserve its rights with its agent to remain a beneficiary.  *See* 7 C.F.R. § 46.46(c)(2).  If the

9   principal fails to preserve its rights with its agent, there is nothing for the agent to preserve on

10  behalf of its principal.[12]

11         That DDJ, Inc. used invoices imprinted with the PACA statutory language when it sold

12  produce to third parties on behalf of the Floreses does not change this result.  Where the principal

13  has failed to perfect its trust rights against its agent, this language merely serves to express the

14  licensee's intent to preserve *its* PACA rights.  PACA provides that a licensee can use "billing or

15  invoice statements to provide notice *of the licensee's intent to preserve the trust*."  7 U.S.C. §

16  499e(c)(4). (emphasis added).  Assuming a licensee can express its principal's intent to preserve

17  PACA rights, a matter this Court need not reach, a licensee can express such intent only in so far

18  as the PACA rights are already in existence.  The licensee cannot bring them into being.  As

19  outlined above, the Floreses argument that their agent-licensee could preserve their trust rights

20  through the agent-licensee's invoices is without merit.

21         The Floreses' reliance on agency principles is also problematic.  According to Appellants,

22  they are entitled to rely on their agent to preserve their PACA rights because any actions by that

23  ───────────

24         [11]PACA even provides a remedy against an agent who fails to preserve the perfected trust
    rights of its principal.  *See* 7 C.F.R. § 46.46(c)(2) ("In the event an agent having a fiduciary duty
25  to collect funds resulting from the sale or consignment of produce and remit such funds to its
    principal fails to perform the duty of preserving its principal's rights to trust benefits, it may be
26  held liable to the principal for damages.")

27         [12]An agent may, of course, preserve its own PACA rights.

28                                              15

1   agent are for the benefit of the principal, acts by an agent have the same legal consequences as if

2   performed by the principal, and a principal may enforce rights arising out of contracts entered

3   into by the agent.  As outlined above, the Floreses' agency arguments are unpersuasive given the

4   statutory scheme outlined by Congress in 7 U.S.C. §§ 499e(c)(3) and (c)(4), and amplified by the

5   regulations promulgated thereunder by the USDA.  The PACA statute and regulations provide

6   specific and detailed notice procedures that must be followed to preserve trust rights.  The

7   Floreses failed to follow these notice procedures and their claims cannot be resurrected on an

8   agency theory.

9        If Appellants' were correct, all non-licensee sellers or suppliers employing licensee-

10  agents could endrun the PACA notice requirements by claiming that their licensee-agents

11  preserved their trust rights on their behalf when they did nothing to preserve their own rights.

12  This would lead to the nonsensical result that their rights would be always-already preserved.

13  Given the powerful rights of super-priority in bankruptcy and disgorgement of trust funds that

14  PACA beneficiaries enjoy, it does not appear that Congress intended to give these rights to

15  beneficiaries without requiring them to act to preserve their trust interests.[13]

16       Thus, because the Floreses did not perfect their PACA rights against their agent, they

17  have no PACA trust rights to enforce.  DDJ, Inc., as their agent, could not preserve any PACA

18  rights that did not exist on the Floreses behalf through its invoices.  It is of no consequence that

19  the Floreses did not sell their produce to DDJ, Inc. because the regulations clearly state that the

20  requirement that the principal perfect its own PACA rights applies to any transfer of "ownership,

21  possession, or control."  The Floreses cannot maintain their arguments on an agency theory

22  because PACA sets out specific procedures that must be followed by a beneficiary enforcing

23

24

25       [13]Under analogous statutes, beneficiaries must preserve their rights to participate in a
    statutory trust.  The Packers and Stockyard Act, 7 U.S.C. § 181, *et seq*. ("PSA") requires a seller
    to preserve its trust rights by providing notice to its packer and to the USDA in much the same
26  way as the pre-1995 PACA.  *See* 7 U.S.C. §§ 196(b) (regarding livestock), and 197(d) (regarding
    poultry).  The PSA has no invoice-notice method.  *Id*.  The trust and notice provisions of PACA
27  are based on the PSA.  *See* H.R. Rep. No. 98-543, U.S.C.C.A.N. 415.

28                                              16

1    PACA rights.  The fact that DDJ, Inc. was the Floreses' agent also does not matter because the

2    Floreses failed to perfect their rights vis-a-vis their own agent.  The Floreses have no PACA

3    rights to enforce.

4              **D.      The Floreses' PACA Trust Against Third Parties**

5         As outlined above, the Floreses have no PACA trust rights to enforce because they failed

6    to preserve their trust rights against their agent.[14]  The Floreses claims against third parties,

7    including DDJ, LLC, also fail because they do not have contractual privity with these parties.

8         PACA only creates a trust between parties to a single transaction.  *In re So Good Potato*

9    *Chip Co.*, 124 B.R. 298 (Bankr. E.D. Mo. 1991).  *So Good* examined whether a seller may

10   recover through a PACA trust from a third party buyer.  In that case, Woerner sold potatoes to

11   Thompson, who in turn sold them to So Good. Woerner had no contract with So Good, even

12   thought most of the potatoes Thompson purchased from Woerner were shipped directly to So

13   Good.  So Good had no involvement in the Woerner-Thompson negotiations and Woerner had

14   no involvement in the Thompson-So Good negotiations.  The court examined the language of the

15   statute and legislative history of PACA and concluded that "the intent of Congress [is] that

16   recoveries from trusts may be from the original buyer in the transaction and not subsequent

17   buyers who are not in privity with the original seller." *So Good*, 124 B.R. at 300.  The court

18   quoted from the legislative history:

19              MR. PANETTA. Let me do it this way. If A sells the goods to B,
                then B establishes a trust to make payment to A. That trust is
20              extinguished at the point that B fully pays A.

21              Now, if, in turn, B sells the goods to C, can C develop a trust as
                well in that relationship to pay B?
22

23
        [14]The Floreses also argue that DDJ, LLC became their fiduciary once DDJ, LLC
24   purchased produce from their agent.  But this argument presupposes that the Floreses were
     beneficiaries of a PACA trust, which they are not.  Also, the Floreses claim in their reply briefs
25   to have delivered produce to DDJ, LLC. This also does not make DDJ, LLC their fiduciary.
     Although DDJ, LLC is a commission merchant, dealer, broker and to which appellants delivered
26   produce, any PACA rights appellants may have had against DDJ, LLC are lost because they did
     not provide it with notice of intent to preserve trust rights.  More fundamentally, the Floreses
27   have admitted not to have a contract with DDJ, LLC and this is fatal to any trust claims.

28                                          17

1

2

     MR. GARDNER. He develops a trust in his relationship with B. C
develops a trust relationship with B.

. . . . .

3

4

     MR. PANETTA. So you are saying in each of the transactions
then, there is a trust obligation?

     MR. GARDNER. Right. Yes, sir.

5

6

     MR. PANETTA. This is like being back in law school. The
question then arises, can A pursue the action against C in that
chain?

7

     MR. GARDNER. No.

8

*Id*., *quoting* Amendments to the Perishable Agricultural Commodities Act: Hearing on H.R.

9

3867, Before the Subcomm. On Domestic Marketing, Consumer Relations and Nutrition of the

10

House Committee on Agriculture, 98th Cong., 1st Sess. at 24-25 (11/8/83), Serial No. 98-41.

11

     Similarly, in *Universal Fruit Company, Inc. v. Windward Management Co.*, 47 Agric.

12

Dec. 1770, 1771 (U.S.D.A. 1988), the court found that a PACA beneficiary may impress a trust

13

claim only against parties with which it is in privity.  There, Universal delivered agricultural

14

products to Windward and Bildner, who then resold the product to Carson.  Universal was not

15

paid by Windard and Bildner and sought payment directly from Carson.  The court, having

16

already held that contractual privity was necessary under PACA, denied recovery from Carson,

17

the third party buyer: "Any money that Carson now owes to Windward and Bildner is an account

18

receivable of Windward and Bildner, and the account receivable as noted, is subject to the PACA

19

trust.  In our view, Universal's priority claim extends only to the accounts receivable held by

20

Windward and Bildner, and not to Carson." *Id*. at 1772.  Thus, the beneficiary's recovery was

21

limited to the party with which it had privity.  No trust claim was allowed against the third party.

22

     The reasoning of *So Good* and *Universal Fruit* is persuasive.  Although these cases, and

23

the legislative history, speak of a "sale" or seller-buyer relationship, the analysis is the same in

24

the instant case because, for PACA trust preservation purposes, there is no difference between a

25

"sale" and a transfer of "possession or control." *See* 7 U.S.C. § 499e(c)(2); 7 C.F.R. §

26

46.46(c)(1).  The Floreses attempt to distinguish *So Good* based on their claims that they did not

27

28

1  sell their produce to DDJ, Inc. and that DDJ, Inc. was their agent.  As demonstrated above,

2  neither of these arguments saves the Floreses' claims.  Thus, even if the Floreses had perfected

3  their PACA trust rights with their agent, which they did not, the Floreses recovery would be

4  limited to against DDJ, Inc.  The Floreses have no claims under a PACA trust theory against

5  DDJ, LLC or, by extension, any of the other third parties.

6       Thus, this Court affirms the bankruptcy court's finding that the Floreses did not perfect

7  any PACA trust rights. This Court's review of the law indicates there is no error.

8       **II.       Appeal of Denial of Motion to Stay**

9       The Floreses asked the bankruptcy court to stay its decision pending appeal.  Appellants

10  contend that the bankruptcy court erroneously denied their motion to stay pending appeal and

11  permitted disbursement of funds from Enoch Packing Company.  The Flores request

12  disgorgement of those funds and that they be placed in an interest-bearing segregated account.

13       When a bankruptcy court has ruled on the issue of a stay of its order pending appeal, the

14  district court, sitting as an appellate court, reviews that decision for abuse of discretion.  *In re*

15  *Irwin*, 338 B.R. 839, 844 (E.D. Cal. 2006).  An appellant seeking a discretionary stay pending

16  appeal under Bankruptcy Rule 8005 must prove: (1) appellant is likely to succeed on the merits

17  of the appeal; (2) appellant will suffer irreparable injury; (3) no substantial harm will come to

18  appellee; and (4) the stay will do no harm to the public interest.  *Id.* at 843.  The party moving for

19  a stay has the burden on each of these elements.  *Id*.  After it clarified its factual findings

20  regarding the relationship between DDJ, Inc. and DDJ, LLC, the bankruptcy court ruled that the

21  Floreses were unlikely to succeed on the merits as a matter of law, that they would suffer no

22  irreparable injury by having their complaint dismissed, did not appear to consider harm to

23  appellees, and found that the public interest would not be served by a stay pending appeal.  This

24  Court agrees with the bankruptcy court's analysis that the Floreses were unlikely to succeed on

25  the merits as a matter of law.

26       This Court finds the bankruptcy court did not abuse its discretion in denying the motion

27

28                                      19

1    for stay.

2          **III.      Appeal of Denial of Disqualification of Counsel**

3          The Floreses also appeal the bankruptcy court's denial of their objection to the attorney

4    representing DDJ, Inc.'s Chapter 7 Trustee.  The Floreses appear to seek disqualification of

5    counsel.  The bankruptcy court summarily overruled the Floreses' objection.  An order denying

6    disqualification of counsel is an interlocutory order and not appealable. *See Firestone Tire &*

7    *Rubber Co. v. Risjord*, 449 U.S. 368, 379 (1981); *see also In re Westwood Shake & Shingle, Inc.,*

8    971 F.2d 387, 389 (9th Cir. 1992) ("Where the underlying bankruptcy court order involves the

9    appointment or disqualification of counsel, courts have uniformly found that such orders are

10   interlocutory even in the more flexible bankruptcy context.").  Thus, this Court has no

11   jurisdiction to review this claim.  *See* 28 U.S.C. § 158(d).

12                          **CONCLUSION AND ORDER**

13         For the reasons stated in the above Memorandum Opinion, IT IS HEREBY ORDERED

14   that the bankruptcy court's (1) dismissal of the Floreses' Adversary Complaint with prejudice is

15   AFFIRMED; (2) denial of motion for reconsideration is AFFIRMED; and (3) denial of *ex parte*

16   request for stay pending appeal is AFFIRMED.  This Court has no jurisdiction to review the

17   bankruptcy court's denial of objection to the attorney representing DDJ, Inc.'s Chapter 7 trustee.

18

19   IT IS SO ORDERED.

20   **Dated:    May 31, 2007**                          /s/ Anthony W. Ishii
                                                  UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28                                          20